UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY DOWDY, et al.,<br>Plaintiffs,<br>v.<br>METROPOLITAN LIFE INSURANCE COMPANY,<br>Defendant. | Case No. 15-cv-03764-JST<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR AWARD OF PREJUDGMENT INTEREST AND ATTORNEYS' FEES**<br><br>Re: ECF No. 60-1 |

Before the Court is Plaintiffs Tommy Dowdy and Sharon Morris-Dowdy's (collectively "the Dowdys") motion for award of prejudgment interest and attorneys' fees. ECF No. 60-1. The Court grants the motion in part.

## I. BACKGROUND[1]

Plaintiffs brought this case under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for payment of accidental dismemberment benefits after Mr. Dowdy was injured in a severe car accident. Five months after that accident, "[d]ue to his multiple comorbidities as well as nonhealing wounds to his left leg and osteomyelitis," Mr. Dowdy underwent "a left below-the-knee amputation." ECF No. 41 at 1-2.

Plaintiffs, who had purchased accidental death and dismemberment insurance from Defendant Metropolitan Life Insurance ("MetLife") through Ms. Morris-Dowdy's employment at Bank of the West, made a claim against that policy. The claim was first denied on February 16, 2015, as MetLife asserted that at this point, they had received "no indication that Mr. Dowdy suffered an actual severing injury" to his ankle outside of the open fracture sustained in the

---

[1] The Court set out the facts of the case fully in a prior order, ECF No. 41, and summarizes them more briefly here.

accident. Upon receiving medical records showing the amputation, Defendant again denied the claim on April 2, 2015, stating that the records "show the amputation was contributed [sic] and complicated by diabetes," and citing to the surgeon's report. Plaintiffs appealed the denial, and Defendant upheld the denial on July 1, 2015, stating again that the amputation was "caused or contributed to" by Mr. Dowdy's diabetes and therefore excluded from the plan, and also that the amputation was not "solely caused by the injuries sustained in the motor vehicle accident." On August 17, 2015, the Dowdys filed suit in this Court. *See* ECF No. 1.

On the parties' Rule 52 cross-motions for judgment, the Court found in favor of Defendant. Citing language in the plan, the Court found the Dowdys had not demonstrated they were entitled to coverage under their MetLife policy because Mr. Dowdy's diabetes had contributed to the need for the amputation of his leg such that the accident was not the "direct and sole cause" of his loss, and because an exclusion for "physical or mental illness" that "caused or contributed to" the loss applied to Mr. Dowdy's diabetes. *See* ECF No. 41. On appeal, the Ninth Circuit reversed, finding in a published opinion that Mr. Dowdy was entitled to the payment of benefits because the record did not support a finding that the pre-existing condition of diabetes *substantially* contributed to the loss of his leg. *See Dowdy v. Metro. Life Ins. Co.*, 890 F.3d 802 (9th Cir. 2017). MetLife subsequently agreed to pay the Dowdys $200,000 in accidental dismemberment benefits and $27,769.83 in hospitalization benefits. ECF No. 61 at 7. This amount slightly exceeded the relief requested in the Dowdys' complaint, which sought $200,000 in dismemberment benefits and $22,000 in hospitalization benefits. *See* ECF No. 1 ¶¶ 39, 44.

The Dowdys then filed an application with the Ninth Circuit for attorneys' fees incurred on appeal. *See Dowdy v. Metro. Life Ins. Co.*, No. 16-15824 (hereinafter "Appeal"), ECF No. 48-2. They requested compensation for the work of attorneys Mark L. Mosley and Douglas A. Applegate, who billed a total of 376.2 hours charged at $675 per hour for a total of $253,820.[2] *See* Appeal, ECF No. 48-3 at 10. In support of their application, they submitted the declaration of

---

[2] The bills reflect that Applegate, but not Mosley, billed $650 per hour for a meeting between the two of them lasting 4.6 hours. This discrepancy produced a total bill of $253,820, rather than the $253,935 bill that would result if all 376.2 hours had been billed at $675 per hour.

2

Gilmur R. Murray, an Oakland-based attorney experienced in "complex litigation matters," certifying "that the time charges [submitted by Mosley and Applegate] are reasonable and appropriate for an appeal of this nature, and that the hourly rates and time [billed] would be reasonable and customary for attorneys of similar experience in complex cases who charge on an hourly, non-contingent basis." Appeal, ECF No. 48-4 at 2, 4.

Nine days later, attorneys Glenn R. Kantor and Russell G. Petti joined in appellants' motion for attorneys' fees. They too submitted declarations describing their expertise in ERISA matters, supported by the civil minutes from an ERISA case in the Central District of California in which Kantor's $700-per-hour rate was found to be reasonable. *See* Appeal, ECF No. 51. Kantor's declaration notes that he has over 30 years' experience at the bar generally and considers himself "an ERISA expert," "hav[ing] handled no fewer than 1,500 ERISA litigation matters." *Id.* at 4, 7. The declaration states that "[t]he rates [sic] charged for Kantor & Kantor partners in 2017 was $700.00 per hour. This rate has risen only 15% over the past six years." *Id*. at 5. Petti's declaration states that he has "a focus on ERISA cases, and from 1996 to the present [he has] handled in excess of 200 such cases." *Id.* at 43. It also reflects that, as of May 1, 2018, Petti raised his billing rate from $650 to $700 per hour. *Id.* at 45. Kantor and Petti's joinder also contained their respective time sheets. While Kantor requests a $700-per-hour rate, his time sheet reflects only an hourly rate of $650, charging $9,815 for 15.1 hours spent on appellate briefing. *Id.* at 4, 12. Petti billed 49 hours at the full $700 an hour he seeks, totaling $34,300. *Id.* at 48. Of these, only 4.26 hours were billed after May 1, 2018, when Petti claims to have raised his rates. *Id.* at 47-48. Together, Kantor and Petti's billing added an additional $44,115 to the costs of the appeal. *Id.* at 12, 48.

The parties fully briefed the issue of attorneys' fees before the Ninth Circuit, resulting in the Dowdys' request for an additional $18,900 for time Mosley spent preparing Plaintiffs' reply papers (28 hours at $675 per hour). Appeal, ECF No. 53-1 at 7 n.1. Rather than decide the attorneys' fees application, however, the Ninth Circuit remanded the issue to this Court at MetLife's request. *See* ECF No. 60-3 at 36; Appeal, ECF No. 52 at 5. The Dowdys then filed the present motion for attorneys' fees and prejudgment interest with this Court. ECF No. 60. They

3

1  seek (1) an award of $304,560 to compensate for attorneys' fees incurred litigating the case in the
2  district court; (2) an award of $316,835 in fees incurred litigating before the Ninth Circuit; and (3)
3  an award of $112,206.52 in prejudgment interest calculated at a rate of 11.89 percent per year.
4  ECF No. 60-1 at 3.

In support of their request for prejudgment interest, the Dowdys submitted a declaration by Arthur Singer, a group benefits insurance expert. ECF No. 60-2. Singer estimated the possible earnings the Dowdys' benefits would have accrued had they been paid at the time of the initial claim and invested according to Singer's recommendations. *Id.* at 4. Mosley also submitted an additional declaration in support of his fee application, averring that he "wrote off [10.3 hours] spent on pre-litigation matters . . . and in researching matters related to ERISA procedures that [he] would not have needed to research if [he] had more experience with ERISA." ECF No. 60-3 at 2. Mosley's declaration includes an invoice for the work he performed in this Court prior to the appeal, as well as a client activity report detailing his work following the Ninth Circuit's remand. *Id.* at 19-35. The Dowdys also submit an additional declaration from Gilmur R. Murray supporting the reasonableness of Mosley's billing records, ECF No. 60-5, and the declaration of Plaintiff Sharon Morris-Dowdy, ECF No. 60-4. Ms. Morris-Dowdy describes the economic hardships she and Mr. Dowdy endured throughout the three years of this litigation, including threats of eviction from their rented space in a mobile home park, the pawning of their jewelry and other valuables, a broken furnace they could not afford to have repaired, an ill pet they could not take to the vet, and the repossession of their car. *Id.* at 2-3. But "the most serious hardship," as described by Morris-Dowdy, "is Mr. Dowdy's lack of mobility" and the Dowdys' inability to afford an electric scooter for him or a wheelchair ramp for their home. *Id.* at 3.

## II. LEGAL STANDARD

Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In considering such a motion, a district court "should apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts." *Smith v. CMTA-IAM Pension Tr.*, 746 F.2d 587, 589 (9th Cir. 1984). In the Ninth Circuit, a prevailing plan participant

4

"should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* (internal quotations omitted). "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). "Where a plaintiff has obtained excellent results, his [or her] attorney should recover a fully compensatory fee." *Id.* at 435.

The burden is on the plaintiff to establish an entitlement to fees, and to document "the appropriate hours expended and hourly rates." *Id*. at 437. A court then must "determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., Ltd*., 668 F.3d 677, 689 (9th Cir. 2012) (citation omitted); *Oster v. Standard Ins. Co*., 768 F. Supp. 2d 1026, 1034 (N.D. Cal. 2011) ("In ERISA cases, attorneys' fees to a prevailing plaintiff are determined by a lodestar analysis, multiplying the number of hours reasonably expended on the matter by a reasonable hourly rate.").

An hourly rate is reasonable if it is based on the "experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended by* 808 F.2d 1373 (9th Cir. 1987). To determine a reasonable hourly rate, a court looks to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* at 1210-11. The forum is typically considered to be the relevant community. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

"[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "Declarations by attorneys regarding the prevailing market rate in the community can suffice to establish a reasonable hourly rate." *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 851 (N.D. Cal. 2017) (citing *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998)); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (considering "declarations from comparable ERISA lawyers attesting" to market rate). But "[h]ours that are not properly billed to

5

one's client also are not properly billed to one's adversary," so courts should exclude hours that were not "reasonably expended" from the lodestar calculation, including where claimed hours are "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434.

### III. DISCUSSION

MetLife opposes the Dowdys' requests for (a) the attorneys' fees Mosley incurred litigating this case at the district court, both prior to the appeal and after the Ninth Circuit's remand; (b) the attorneys' fees Mosley, Applegate, Kantor, and Petti incurred litigating this case on appeal; and (c) an award of prejudgment interest, calculated at 11.89 percent per year, on the benefits ultimately paid to Plaintiffs. MetLife's primary contention as to attorneys' fees is that the claimed hours and rates are not reasonable. ECF No. 61 at 9. As to prejudgment interest, MetLife contends that the requested interest rate is speculative and unfounded, and that under the language of the Dowdys' policy, the payable amount was only $25,600. *Id.* at 11. "As such, [P]laintiffs already have received the amount that became payable by reason of the Ninth Circuit decision, plus a much greater amount that dramatically overcompensates them for any loss of use of the funds." *Id.*

The Court first addresses the question of attorneys' fees and then turns to the issue of prejudgment interest.

#### A. Attorneys' Fees at the District Court

MetLife first contends that the Court should deny Plaintiffs' fee request entirely, based on the application of the factors set forth in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980). There, the Ninth Circuit held that a district court awarding fees under 29 U.S.C. § 1132(g)

> should consider these factors among others: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell*, 634 F.2d at 453 (citations omitted).

MetLife argues that "the *Hummell* factors do not weigh heavily on the side of a fee award." ECF No. 61 at 12. But this argument ignores Ninth Circuit precedent holding that if "the fact that the plaintiff prevailed 'is evident from the order of the [adjudicating] court, it is unnecessary for the court to engage in a discussion of the factors enumerated in *Hummell*.'" *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1164 (9th Cir. 2001) (quoting *Nelson v. EG & G Energy Measurements Grp., Inc.*, 37 F.3d 1384, 1392 (9th Cir. 1994)).

At the end of the day, this case was an unqualified victory for Plaintiffs. After this Court found for MetLife, the Ninth Circuit reversed, finding that Plaintiffs were entitled to benefits under the policy. *Dowdy,* 890 F.3d at 811. Following entry of the Ninth Circuit's order, and without contesting the matter further in the district court, MetLife paid the Dowdys $227,769.83 – slightly more than the prayer in their complaint. ECF No. 61 at 7. When they initiated this suit, the Dowdys sought a judgment entitling them "to benefits [of] at least $222,000." ECF No. 1 ¶ 44. This result alone establishes the Dowdys' entitlement to reasonable attorneys' fees.

### 1. Market Rate

The Dowdys request the Court apply a market-based hourly rate of $675 per hour for all hours expended at the district court level based on the declarations submitted in support of the application. According to Mosley's records, from May 18, 2015 to March 8, 2016, he billed 406.5 hours at $600 per hour. ECF No. 60-3 at 19-30. From June 25, 2018, to September 6, 2018, Mosley worked another 44.7 hours; all of which were billed at $600 per hour, with the exception of 4.3 hours billed at $675 per hour. *Id.* at 32-34.[3] Finally, Mosley lists another 30.4 hours billed at $675 per hour during the opposition and reply phase of the briefing between October 3, 2018 and October 10, 2018. ECF No. 62-1 at 2.

MetLife responds that a rate of $400 per hour would be reasonable, though it offers no evidence in support of that rate. It attacks the relevance of the Dowdys' declarations, arguing that

---

[3] With the exception of the February 19, 2016 payment of $1000 in expert fees to Art Singer, MetLife does not appear to contest the expenses Mosley billed for the litigation at the district-court level. *See* ECF No. 61 at 17 n.17; ECF No. 60-3 at 29-30. The Court sustains MetLife's objection to the Singer expense. Accordingly, MetLife is ordered to compensate the Dowdys for $7,635.16 in expenses.

7

under *Welch*, "plaintiffs [must] support [an attorneys' fees] motion with evidence that *their counsel* actually *charged paying clients* the rates they seek here, for similarly complex ERISA litigation." ECF No. 61 at 15. *Welch* is clear that "billing rates 'should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.'" 480 F.3d at 946 (quoting *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993)). In other words, the question is not what *these* lawyers charged *these* paying clients. As happens frequently in ERISA cases, the attorneys here took the case on contingency. Rather, the question is what fee lawyers of like skill and experience could command in the market in a case of similar complexity. The Dowdys' declarations address this issue.

Nonetheless, the Court finds that the requested rates for Mosley and Applegate are not fully supported by the record. The requested rate of $675 would be appropriate for an experienced attorney who specializes in ERISA matters. *See, e.g.*, *Echague v. Metro. Life Ins. Co.*, 69 F. Supp. 3d 990, 996 (N.D. Cal. 2014) (approving rate of $650 for ERISA specialist with 18 years of experience); *Oster*, 768 F. Supp. 2d at 1034-35 (approving rate of $600 for partner at "one of the leading plaintiff's ERISA litigation firms in the San Francisco Bay Area"); *Doe v. Prudential Ins. Co. of Am.*, 258 F. Supp. 3d 1089, 1095 (C.D. Cal. 2017) (awarding $650 per hour to three "experienced ERISA specialists"). Here, Mosley and Applegate are not ERISA experts, although each is experienced in complex litigation. On occasion, this lack of expertise made itself apparent, as when counsel were required to research basic ERISA issues that would already have been familiar to a more experienced lawyer. *See, e.g.*, ECF No. 60-3 at 22 (recording 5.4 hours for "Research re issues that require discovery and outline discovery plan); *id.* at 23 (recording 3.5 hours for "Research re ERISA structure and scope of allowable discovery"). Accordingly, the Court will reduce the hourly rate for this case to $600 per hour.[4] *See, e.g.*, *Mull v. Motion Picture*

---

[4] Mosley's hourly rate increased from $600 to $675 over the course of the case. The Court applies its reduction to the higher rate and then awards fees at that rate for all hours reasonably incurred. "District courts have the discretion to compensate plaintiff's attorneys for a delay in payment by

8

*Indus. Health Plan*, No. LA CV 12-06693-VBF, 2017 WL 748980, at *13 (C.D. Cal. Feb. 27, 2017) (agreeing with defendants "that plaintiffs' counsel have not carried their burden of presenting solid evidence to support a finding that they are experienced ERISA specialists per se rather than merely experienced and accomplished lawyers hired for an ERISA case," and reducing hourly rate accordingly).

### 2. Claimed Hours

In total, the Dowdys request compensation for 481.6 hours Mosley performed before the district court, both prior to the appeal and after remand.[5] ECF No. 62-1. This figure incorporates Mosley's reduction of his bill by 14.3 hours. ECF No. 62-1.

MetLife contends that only "one-half to, at most, two-thirds of the claimed hours [are] reasonable." ECF No. 61 at 18. MetLife asserts that (1) the time charges are "grossly excessive," *id.* at 5; (2) Plaintiffs' counsel pursued wasteful research and strategy tasks due to "inexperience[] in the [ERISA] area of law," *id.* at 9; and (3) Plaintiffs' counsel failed to exercise "billing judgment," which "consists of winnowing the hours *actually* expended down to the hours *reasonably* expended," *id.* at 14 (quoting *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 552 (7th Cir. 1999) (emphasis added by MetLife)).

MetLife offers little to substantiate a reduction of 33 to 50 percent. For example, it provides no information about the total hours its own counsel spent litigating the case, as a basis of comparison. And as regards the tasks identified in Mosley's time records, as the Dowdys' reply brief notes, "the only 'non-compensable' matters that MetLife identifies are: (a) 2.2 hours for time spent researching the admissibility of extrinsic evidence under ERISA; (b) 40 hours spent on discovery-related matters, including briefing of those matters to this Court; and (c) 7.1 *more* hours (for a total of 9.3 hours) spent researching, outlining and drafting arguments on the admissibility

---

either applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement." *Welch*, 480 F.3d at 947. After having adjusted the hourly rate, the Court uses the former approach.

[5] The Court did not hear oral argument on this motion and so disregards the additional five hours Mosley allotted for that argument. *See* ECF No. 62-1 at 2.

9

of extrinsic evidence." ECF No. 62 at 15.

The Court agrees with MetLife that the identified hours were unnecessary and would not have been incurred by more experienced counsel, and therefore excludes those hours. But the Court declines to reduce the claimed hours further, because the Court has already reduced the hourly rate to address the concerns MetLife identifies. A further reduction would be punitive. Accordingly, the Court finds the Dowdys are entitled to compensation for 432.3 hours (481.6 minus 49.3) of attorneys' fees at the district court before appeal and on remand.

Plaintiffs are entitled to $259,380 (432.3 hours at $600 per hour) plus expenses of $7,635.16, for a total of $267,015.16 in attorneys' fees and costs incurred at the district court.

### B. Attorneys' Fees on Appeal

Because their appeal to the Ninth Circuit was necessary to their success, the Dowdys are also entitled to reasonable attorneys' fees for that stage of the litigation. They ask the Court to award $253,820 in fees for 376.2 hours performed by Mosley and Applegate at a rate of $675 per hour. Appeal, ECF No. 48-3. They also seek $44,115 in fees for 64.1 hours of work performed at the appellate level by attorneys Glenn Kantor (15.1 hours) and Russell Petti (49 hours) (collectively "Kantor & Kantor"). Appeal, ECF No. 51.

As an initial matter, MetLife contests the propriety of Kantor & Kantor's joinder in the Ninth Circuit fee request. Appeal, ECF No. 52 at 6-7. The joinder was filed separately from and after the original fee petition. MetLife contends the joinder violates Federal Rule of Appellate Procedure 27(a)(2), "which requires all motions to state 'with particularity' the 'relief sought' by such motion, and expressly provides, 'Any affidavit or other paper necessary to support a motion must be served and filed with the motion.'" Appeal, ECF No. 52 (quoting Fed. R. App. P. 27(a)(2)(B)(i)). MetLife responded to the joinder on the merits and makes no claim of prejudice. Moreover, the Kantor & Kantor joinder was filed prior to the deadline for filing a separate fee application. The objection is overruled.

#### 1. Market Rate

For the reasons discussed earlier, the Court will award fees regarding the work of attorneys

Mosley and Applegate[6] at the rate of $600 per hour.

Kantor & Kantor attorneys Glenn Kantor and Russell Petti each seek an hourly rate of $700. Both are experienced ERISA attorneys: Kantor specializes in the field and has been named a "Southern California Super Lawyer" for the past six years in the area of employee benefits, and Petti has handled over two hundred ERISA cases and publishes and speaks to professional groups on aspects of ERISA litigation. Appeal, ECF No. 51 at 7, 43. Courts in this district have regularly found similar rates to represent a reasonable market rate for experienced ERISA attorneys in the San Francisco Bay Area. *See, e.g.*, *Reyes*, 281 F. Supp. 3d at 853 ($700 rate); *Gurasich v. IBM Ret. Plan*, No. 14-cv-02911-DMR, 2016 WL 3683044, at *7 (N.D. Cal. July 12, 2016) ($650 rate); *Echague*, 69 F. Supp. 3d at 997 ($650 rate). The Court approves a rate of $700 for these attorneys.

### 2. Claimed Hours

As to the reasonableness of the claimed hours, MetLife repeats its arguments about lack of billing judgment and over-charging. MetLife also complains that the 440.3 hours claimed for work on appeal is an unreasonable expenditure for "reworking and resubmitting" the arguments in the Dowdys' district court briefs. Appeal, ECF No. 52 at 17.

The Court shares some of MetLife's concerns. The Court agrees that the total number of hours claimed for work on appeal is excessive given that the issues presented to the Ninth Circuit had already been fully briefed below. The Court also notes the lack of apparent relevance of and particularity in certain time sheet entries. For example, on September 14, 2016, Mosley billed 6.8 hours for "Research in Hastings Law Library," without specifying the subject of that research. Appeal, ECF No. 48-3 at 8. On November 15, 16, and 17, 2016, the time sheet notes several hours related to "lien issues" and "special needs trusts," which also do not seem relevant to the issues before the Ninth Circuit. *Id.* at 9. The Court also is concerned that 440.4 hours of work was performed entirely by four senior attorneys. A team that size could, and in most cases should, consist of attorneys (or a mix of attorneys and paralegals) at different billing rates. It simply

---

[6] The Court's observations regarding attorney Mosley's background and experience apply equally to Applegate.

11

cannot be the case that all 440.4 hours of work on the Dowdys' appeal was required to be performed by senior partners.

Accordingly, the Court will reduce the time sheets of each attorney by twenty-five percent. Mosley and Applegate thus are entitled to compensation for 282.15 hours at the appellate court, at a rate of $600 per hour, for a total of $169,290. Kantor is entitled to compensation for 11.325 hours work at a rate of $700 per hour, for a total of $7,927.50. Petti is entitled to compensation for 36.75 hours at a rate of $700 per hour, for a total of $25,725. And Mosley is entitled to compensation for 21 hours of additional work on the appellate fee application reply brief at a rate of $600 per hour for a total of $12,600. Overall, MetLife is ordered to pay the Dowdys $215,542.50 in compensation for attorneys' fees expended litigating this case at the Ninth Circuit.

### C. Prejudgment Interest

The Dowdys also seek prejudgment interest calculated at an interest rate of 11.89 percent per year. "A district court may award prejudgment interest on an award of ERISA benefits at its discretion." *Blankenship v. Liberty Life Assurance Co.*, 486 F.3d 620, 627-28 (9th Cir. 2007) (citing, as examples, *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001); *Grosz-Salomon*, 237 F.3d at 1163-64; *Blanton v. Anzalone*, 813 F.2d 1574, 1575 (9th Cir. 1987)). In the Ninth Circuit, "the purpose served by awarding a plaintiff prejudgment interest where ERISA benefits have been unlawfully withheld is to compensate a plaintiff for the losses incurred as a result of the nonpayment of benefits." *Echague*, 69 F. Supp. 3d at 999 (citing *Dishman,* 269 F.3d at 988). "[P]re-judgment interest is intended to cover the lost investment potential of funds to which the plaintiff was entitled, from the time of entitlement to the date of judgment." *Nelson*, 37 F.3d at 1391.

Absent substantial evidence suggesting the equities of a particular case require otherwise, "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961[a] is appropriate for fixing the rate of pre-judgment interest." *Grosz-Salomon,* 237 F.3d at 1164. However, the district court retains "the discretion to award interest at a rate it deems appropriate in the particular case, based on the considerations of fairness and balancing the equities." *Oster*, 768 F. Supp. 2d at 1039; *see also Blankenship,* 486 F.3d at 628 (upholding the district court's award of

prejudgment interest a 10.01 percent rate).

As an initial matter, MetLife argues that the Court should not award any interest because the benefit amount MetLife ultimately paid the Dowdys "dramatically overcompensate[d]" them. Given that MetLife paid the benefits voluntarily, the Court cannot accept that argument. As earlier described, the Dowdys have amply described the hardships they endured while this litigation was pending and before the payment of the benefits to which they were entitled. *See* Declaration of Plaintiff Sharon Morris-Dowdy, ECF No. 60-4 (describing threats of eviction, the pawning of Plaintiffs' jewelry and other valuables, the repossession of their car, and other financial difficulties). The just exercise of the Court's discretion requires an award of interest.

The Court next turns to the appropriate interest rate. The Dowdys support their request for a rate of 11.89 percent with the declaration of Arthur Singer. He opines that "if Ms. Morris-Dowdy had received competent financial advice and followed it, she would have invested the benefits in a mutual fund that is 'balanced' between equities (60%) and bonds (40%)." ECF No. 60-2 at 3. Based on this assumption, Singer describes two Vanguard mutual funds that he believes would have been appropriate for the Dowdys' purposes, and uses those funds' historical returns to calculate the amount the Dowdys hypothetically would have earned based on the full investment of their benefits over the past three years. *Id.*

Singer's opinion is based on speculation and unsupported by the historical facts. As previously noted, the Dowdys experienced severe financial difficulties during the pendency of this case, and were unable even to meet their basic needs. Had they received their insurance proceeds earlier, it is likely they would have used the money to meet those needs, not invested it in mutual funds, particularly given the lack of evidence that they had ever invested in such funds, or any other investment vehicle, before the filing of this motion. Notably, Ms. Morris-Dowdy states that she used the insurance proceeds to establish a special needs trust for Mr. Dowdy, but does not state that she has invested the funds in any way. ECF No. 60-4 at 2. In other words, she has not invested the money now that she actually has it. It is unlikely that she would have done so three

years ago.[7]

The Court therefore applies the one-year Treasury constant maturity rate of 2.5 percent. *See* Federal Reserve Bank of St. Louis, 1-Year Treasury Constant Maturity Rate, https://fred.stlouisfed.org/series/DGS1/ (last accessed January 7, 2019).

## CONCLUSION

For the foregoing reasons, the Court awards the Dowdys (1) an award of $267,015.16 for attorneys' fees and costs incurred litigating this case before this Court prior to appeal and on remand; and (2) an award of $215,542.50 for attorneys' fees incurred litigating this case on appeal, for a total of $482,557.66. Additionally, the Court finds the Dowdys are entitled to prejudgment interest at the rate of 2.5 percent.

Plaintiffs are ordered to serve a proposed form of judgment on Defendant within five court days of the date of this order that includes a calculation of the total amount of prejudgment interest due. Defendant shall either sign the proposed judgment, indicating its agreement only as to form, or provide written objections to the form of judgment, within five court days thereafter. Within five court days thereafter, Plaintiff must file either an approved form of judgment, or a proposed form of judgment, a copy of Defendant's objections, and a written response. The objections and response may be no longer than three pages each.

**IT IS SO ORDERED.**

Dated: January 7, 2019

_____
JON S. TIGAR
United States District Judge

---

[7] This case is unlike *Blankenship*. In that case, the district court found it necessary to use a higher interest rate because the plaintiff "was forced to replace the $6,093.82 per month he would have received with his own personal funds" – funds that "would otherwise have been invested in a Vanguard mutual fund in which he had already invested over one half million dollars." *Blankenship*, 486 F.3d at 628. There is no evidence that Plaintiffs here experienced the same opportunity cost.

14